IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BP PRODUCTS NORTH AMERICA INC.,   ) | |
|     Plaintiff,                                              ) | |
| ) | |
| v.                                                                     ) | CIVIL ACTION NO. 10-00625-KD-N |
| ) | |
| MERRITT OIL CO., INC. *et al.*,                  ) | |
|     Defendants.                                     ) | |

**ORDER**

This matter is before the Court on Plaintiff BP Products North America Inc.'s Motion for Summary Judgment (Doc. 31), brief and evidentiary materials in support (Docs. 32, 33 & 41), Defendant Merritt Oil Co., Inc.'s Response (Doc. 36), Defendant R. Fred Walding's Response (Doc. 37), and Plaintiff's Reply (Doc. 38).  Upon consideration, and for the reasons set forth herein, Plaintiff's motion for summary judgment is due to be **GRANTED**.

**I.**    **Procedural History**

On November 12, 2010, Plaintiff BP Products North America Inc. ("BP Products") filed a complaint in this Court against Defendants Merritt Oil Co., Inc. ("Merritt Oil"), Richard Blow ("Blow"), Richard Merritt ("Merritt"), and R. Fred Walding ("Walding"), alleging breaches of various contracts and seeking enforcement of certain personal guaranty agreements.  (Doc. 1). Defendants Merritt Oil and Merritt answered the Complaint on December 3, 2010.  (Doc. 8).  On December 17, 2010, Defendant Walding filed his answer and simultaneously asserted three cross-claims against his two individual co-defendants.  (Doc. 10).  Defendant Blow filed his answer on December 22, 2010 but did not respond to the cross-claims.  (Doc. 12).  On January 7, 2011, Merritt answered the allegations of Walding's cross-complaint.  (Doc. 13).

On July 21, 2011, BP Products filed a Motion for Summary Judgment against Merritt Oil and

Walding.[1]  (Doc. 31).  The Court ordered that any response in opposition be filed on or before August 11, 2011. (Doc. 35).  On August 18, 2011 — a week after their papers were due — Merritt Oil and Walding filed untimely responses.[2]  (Docs. 36 & 37).  The following day, on August 19, 2011, BP Products filed its reply (Doc. 38), and the Court took the fully briefed motion under submission.

II.     **Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a party asserts that a fact cannot be or is genuinely disputed, that party must

- (A)    cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

- (B)    show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

BP Products, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1]  BP Products did not seek summary judgment against Merritt or Blow, as this case has been stayed against them as a consequence of their having filed petitions for bankruptcy relief. (Docs. 16, 19, 29 & 30).

[2]  Not only were Merritt Oil and Walding's responses untimely, but Walding's was unsigned, thereby violating Federal Rule of Civil Procedure 11(a), Local Rule 5.1(b), and Section II.C.1 of this district's Administrative Procedure for Filing, Signing, and Verifying Documents by Electronic Means.  However, as discussed below, because neither defendant's response identifies a genuine issue of material fact, Merritt Oil and Walding's procedural breaches and disregard for this Court's briefing order are immaterial to the Court's analysis.

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If a non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.  In reviewing whether a non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor.  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted), cert. denied, 507 U.S. 911 (1993).

In this case, Defendants Merritt Oil and Walding have not challenged any of BP Products' proposed findings of fact.  (Docs. 36 & 37).  Merritt Oil expressly concedes BP Products' entitlement to summary judgment (Doc. 36 at 1), and Walding professes an inability to offer a "thorough" response to BP Products' motion, claiming he was denied access to Merritt Oil's records between his March 2009 resignation from Merritt Oil and the December 2010 commencement of this action. (Doc. 37 at 2-3, ¶¶ 9-11).  In accordance with Local Rule 7.2(b), the Court considers Merritt Oil and Walding's failures to "point out the disputed facts" as admissions that no material factual dispute exists.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302-03 (11th Cir. 2009) (giving deference to district court's interpretation of local rule providing that, if a party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's statement of material facts with specific citations to evidence or otherwise fails to state a valid objection to the material fact, such fact will be deemed admitted).

By failing to contest BP Products' proposed facts, Merritt Oil and Walding have not met their burden to present evidence upon which the Court could find that there is a genuine issue of

material fact.  However, the "mere failure of the non-moving party to create a factual dispute does not automatically authorize the entry of summary judgment for the moving party."  Dixie Stevedores, Inc. v. Marinic Mar., Ltd., 778 F.2d 670, 673 (11th Cir. 1985).  The burden of proof remains with BP Products.  Mann, 588 F.3d at 1303 ("Even in an unopposed motion, the moving party still bears the burden of identifying the [evidence] which it believes demonstrates the absence of a genuine issue of material fact." (internal citation and quotation marks omitted)).  Though the Court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted," United States v. One Piece of Real Prop. Located at 5800 SW 4th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004), it must consider the merits of the motion and ensure that it is supported by the summary judgment record.  Id. at 1101-02.

## III.  Factual Background

BP Products is a Maryland corporation engaged in the business of selling gasoline, diesel fuel, and other petroleum products to independent jobbers and dealers.  (Doc. 1 at 2, ¶ 3).[3]  Merritt Oil, an Alabama corporation, was a jobber that purchased gasoline, diesel fuel, and other petroleum products from BP Products pursuant to a written contract.  (Id., ¶ 4; Doc. 8 at 1, ¶ 4).  Defendants Merritt, Blow, and Walding are Alabama residents who, at various times between 1995 and 2006, executed Unlimited Guaranties that had the effect of making each of the individual defendants personally liable for any and all of Merritt Oil's obligations to BP Products.  (Doc. 1-6 at 1-5). Specifically, and in pertinent part, the Unlimited Guaranties stated that each guarantor:

> [u]nconditionally [g]uarantee(s) [p]ayment [w]hen [d]ue, whether by declaration or otherwise, of any and all indebtedness, including interest thereon, of [Merritt Oil] to [BP Products], howsoever such indebtedness may arise, whether as principal,

---

[3]  Jobbers are wholesalers who resell BP gasoline, diesel fuels, and petroleum products to the public through their own retail sites or to independent dealers, who in turn resell the products to the public.  (Doc. 1 at 2, ¶ 3).

> guarantor, endorser or otherwise, now or hereafter existing, including but not limited to payments or indebtedness received by [BP Products] from [Merritt Oil] which [BP Products]may subsequently be required to relinquish under applicable law because of [Merritt Oil's] insolvency, (all such indebtedness being herein called "Debt"), and agrees to pay all expenses (including attorneys' fees and legal expenses) incurred by [BP Products] to collect Debt and in enforcing this guaranty.

(Id.).[4]  Additionally, each signatory to the Unlimited Guaranties agreed that his liability would be joint and several.  (Id.).

Merritt Oil's obligations to BP Products arose out of various contracts — a Branded Jobber Contract; a Jobber Re-Image Program ("JRP") Contract and a JRP Assignment and Assumption agreement; two Jobber Outlet Incentive Program ("JOIP") Contracts and two JOIP Assignment and Assumption agreements; and an Electronic Point of Sale ("EPOS") Contract — each of which is discussed briefly below.

*The Branded Jobber Contract*

BP Products and Merritt Oil entered into a Branded Jobber Contract dated June 14, 2006 pursuant to which BP agreed to sell, and Merritt Oil agreed to purchase, BP-branded petroleum products to be resold by Merritt Oil at its approved retail stations.  (Doc. 1-1 at 1, ¶ 2).  Merritt Oil further agreed that it would pay for all products, open account items, and all other items and services via electronic funds transfer; that all BP Products invoices would be deemed valid unless Merritt Oil objected in writing within 60 days; that BP Products could audit Merritt Oil's records; and that Merritt Oil would maintain certain specified image and equipment standards at its stations supplied by BP Products.  (Id. at 2-6, ¶¶ 4(b), 4(d), 5(e), 5(i), 8(b)).

By letter dated July 29, 2009, BP Products terminated its relationship with Merritt Oil under

---

[4]  Two of the Unlimited Guaranties referred to BP Products, two referred to "Amoco Oil Company," and one referred to "Amoco Oil Company or its successor, and/or, as the case may be, BP Exploration & Oil, Inc."  (Doc. 1-6).

the Branded Jobber Contract, alleging that, in violation of the parties' agreement and certain state and federal laws, Merritt Oil had comingled motor fuels at a number of its stations. (Doc. 1-3 at 1-3). The termination was to take effect on August 7, 2009, but BP Products granted Merritt Oil a one-week extension. (Doc. 1-3 at 4).

Between July 30, 2009 and August 11, 2009 — as Merritt Oil's contractual relationship with BP Products was coming to an end — BP Products delivered $683,464.67 of petroleum products to Merritt Oil. (Doc. 32-2). During that same time period, Merritt Oil made seven wire payments to BP Products totaling $591,000.00, resulting in a remaining balance of $92,464.67. (Doc. 32-3).

On October 27, 2009 and September 1, 2010, counsel for BP Products sent letters to Merritt Oil demanding, *inter alia*, payment of the unpaid fuel balance (**$92,464.67**) and reimbursement for expenses incurred in investigating the motor oil comingling (**$13,882.66**). (Doc. 1-7).[5] The letters also noted that, pursuant to the Unlimited Guaranties, it would hold Messrs. Blow, Merritt, and Walding personally liable for Merritt Oil's debt, interest thereon, and BP Products' attorneys' fees and other collection costs unless payment was received in full. (Id.).[6] Neither Merritt Oil nor Walding has rendered any such payment. (Doc. 32-1 at 3-4, ¶¶ 10, 17).

*The JRP Contract and the Chattahoochee Assignment*

Though a fully executed and dated copy of their agreement has not been placed in the record, the parties do not dispute that they entered into a JRP Contract pursuant to which BP Products made funds available to Merritt Oil for the purpose of re-imaging its stations. (Doc. 1-2 at 1-4; Doc. 32 at

---

[5] Though the October 27, 2009 letter was addressed only to Merritt Oil, the September 1, 2010 letter was sent to Merritt Oil and each of the individual defendants, including Walding.

[6] Merritt Oil agreed to indemnify BP Products from all costs and expenses, including reasonable attorneys' fees, arising out of a default or breach of the Branded Jobber Contract by Merritt Oil. (Doc. 1-1 at 9, ¶ 14). Merritt Oil further agreed to pay BP Products the greater of 8% interest or 2% over the Prime Rate on all amounts not timely paid by Merritt Oil. (Doc. 1-1 at 2, ¶ 4(c)).

5, ¶ 22; Doc. 36 at ; Doc. 37 at 2-3, ¶¶ 10-11). Additionally, on January 11, 2006, Merritt Oil assumed responsibility for re-imaging a BP-branded station operated by Chattahoochee Oil Co., Inc. ("Chattahoochee") by entering into an Assignment and Assumption of Jobber Re-Image Program Contract with Chattahoochee.[7] (Id. at 5-10).

The JRP Contract between Merritt Oil and BP Products specified that all or some of the re-imaging funds provided by BP Products would have to be paid back should Merritt Oil fail to meet certain conditions:

> (a) Default. Jobber's Retail Outlets . . . are permitted to participate in the JRP only if Jobber at all times: (i) complies with all JRP requirements, including, but not limited to, the terms and conditions of this JRP Contract; (ii) complies with all other [BP Products'] marketing contracts, agreements, programs standards and strategies; and (iii) remains a party to a valid and in-force branded Jobber Contract by and between Jobber and [BP Products]. Jobber's violation or inability to comply with any term or condition of this JRP Contract, permits [BP Products], in its discretion, to require that Jobber reimburse [BP Products] for payments made by Company, whether directly or indirectly, for Re-Image Materials and Labor Allowance . . . and require that Jobber debrand the Retail Outlets.

(Doc. 1-2 at 3, ¶ 7(a)). The repayment provisions of Merritt Oil's Assignment and Assumption agreement with Chattahoochee was substantively similar. (Id. at 9, ¶ 6(a)). Applying amortization rates set forth in the JRP Contracts, BP Products has calculated and made a sufficient, undisputed showing that Merritt Oil owed **$31,111.85** of re-imaging funds after BP Products terminated the parties' relationship in 2009 and the Merritt Oil and Chattahoochee stations were debranded. (Doc. 1-2 at 3, ¶ 7(b)(ii); id. at 9, ¶ 6(b)(ii); Doc. 32-1 at 4-5, ¶¶ 20-21; Doc. 32-5). Neither Merritt Oil nor Walding has rendered any such payment. (Doc. 32-1 at 5, ¶ 22).

Additionally, the JRP Contracts required Merritt Oil to reimburse BP Products for certain

---

[7] Schedule A to the Assignment and Assumption refers to a station at 2810 Government Street in Mobile, Alabama, whereas the Complaint and other documents in the record refer to a station at 2810 Government Boulevard. Compare Doc. 1-2 at 6 with Doc. 1 at 5, ¶ 20 and Doc. 32-5. The Court understands these stations to be one and the same.

costs related to the "Mystery Shop" audit program. (Doc. 1-2 at 2, ¶ 4(c); id. at 8, ¶ 4(c)). BP has calculated the undisputed amount due to be **$1,613.91**. Neither Merritt Oil nor Walding has rendered any such payment. (Doc. 32-1 at 3, ¶ 12).

*The JOIP Contracts and the Sterling and Prince Assignments*

On May 23, 2005 and June 8, 2007, Merritt Oil entered into JOIP Contracts with BP Products. (Doc. 1-4 at 1-11). Those contracts provided that, as incentive to build, modernize, or acquire retail locations, BP Products would pay Merritt Oil either a lump sum or a rebate on gasoline purchased from BP Products. (Id.). The JOIP Contracts further provided that, in the event that a retail location covered by the contract was debranded, Merritt Oil would return all or some of the incentive payments pursuant to an amortization schedule. (Id. at 3-4 ¶¶ 5, 7; id. at 8-9, ¶¶ 5, 7).

Merritt Oil also accepted assignment of two JOIP Contracts involving other jobbers. Specifically, on May 1, 2001, Merritt Oil accepted assignment of a JOIP Contract between Sterling Oil Company ("Sterling") and Amoco Oil Company, and, on February 15, 2007, Merritt Oil accepted assignment of a JOIP Contract between Prince Oil Company, Inc. ("Prince") and BP Products. (Id. at 12-23). Sterling and Prince's JOIP Contracts were each substantially similar to Merritt Oil's JOIP Contracts, and both required the return of unamortized incentive payments should a covered location be debranded. (Id. at 14-15, ¶¶ 5-6; id. at 20-21, ¶¶ 5, 7).

By virtue of BP Products' termination of Merritt Oil's Branded Jobber Contracts, all of the Merritt Oil, Sterling, and Prince locations receiving JOIP payments debranded on August 15, 2009. (Doc. 32-6). Applying amortization rates set forth in the JOIP Contracts, BP Products has calculated and made a sufficient, undisputed showing that the unamortized portion of incentive payments retained by Merritt Oil was equal to **$190,135.04**.[8] Neither Merritt Oil nor Walding has returned

---

[8] BP Products has acknowledged that, in preparing Doc. 32-6, an amortization summary of the

8

those funds.  (Doc. 32-1 at 7, ¶ 29).

*The EPOS Contract*

Sometime between September 25, 2005 and October 31, 2007,[9] Merritt Oil entered into an EPOS Contract with BP Products.  (Doc. 41 at 3-5).  That contract required Merritt Oil to install electronic point-of-sale equipment at each of its retail locations.  (Id. at 3, ¶ 2).  BP Products agreed to pay the costs associated with the new equipment and its installation.  (Id. at 4, ¶ 3).  However, in the event that any of its locations debranded within five years of the EPOS equipment installation date, Merritt Oil agreed to reimburse all or some of BP Products' costs pursuant to an amortization schedule set forth in the contract.  (Id., ¶ 5).  Additionally, the EPOS Contract required Merritt Oil to pay BP Products a "system fee" for each of its locations.  (Id., ¶ 4).

BP Products has identified 14 Merritt Oil locations that that debranded before the expiration of the five-year amortization period.  (Doc. 32 at 13-14, ¶¶ 69 & 72).  Applying the amortization rates set forth in the EPOS Contract, BP Products has calculated and made a sufficient, undisputed showing that the unamortized portion of reimbursable equipment and installation costs is equal to **$44,788.41**.  Neither Merritt Oil nor Walding has reimbursed BP Products in that amount.  (Doc. 32-1 at 8, ¶ 36).

---

JOIP payments, it miscalculated the unamortized portion to be $192,635.04.  (Doc. 32 at 12 n.2; Doc. 32-1 at 7, ¶ 29).  The Court accepts the corrected figure of $190,135.04.

[9]  The EPOS Contract placed in the record is undated, but it makes reference to an October 31, 2007 deadline before which Merritt Oil was obligated to install certain telecommunication and networking hardware and software.  (Doc. 41 at 3, ¶ 2).  Additionally, it appears that the contract form itself was revised on September 25, 2005.  (Id. at 3-5).  Accordingly, the Court uses those two dates to mark the extreme ends of the period during which the parties entered into their agreement.

9

**IV.     Analysis**

    A.     Governing Law

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Alabama courts hold that contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement.  Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991).  Though the parties have neither briefed the question of which state's law should apply to BP Products' contract claims nor put forward any evidence as to where the Branded Jobber, JRP, JOIP, and EPOS Contracts were made, BP Products' memorandum in support of its motion cites to Alabama case law, and the Unlimited Guaranties were executed in Alabama. (Doc. 1-6 at 1, 3-5).[10]  In the absence of any dispute from Merritt Oil or Walding, the Court applies Alabama law to each of BP Products' contract-based claims.

    B.     Breach of Contract

Counts I, III, IV, and V of BP Products' complaint allege against Merritt Oil breaches of its Branded Jobber, JRP, JOIP, and EPOS Contracts. (Doc. 1 at 10-14, ¶¶ 44-77).  Under Alabama law, the essential elements of a cause of action for breach of contract are the existence of a valid contract binding the parties; plaintiff's performance under the contract; defendant's nonperformance; and damages. See, e.g., Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1195 (Ala. 2003).

In this case, each of the elements is met.  BP has put before the Court the contracts

---

[10]  Of the five Unlimited Guaranties that BP Products has placed in the record, all but one were executed in Mobile, Alabama.  One of the Unlimited Guaranties, which is undated and unwitnessed, does not indicate the place of its execution. (Doc. 1-6 at 2).

themselves (Docs. 1-1, 1-2, 1-4 & 41), a sworn affidavit and supporting documentation that attests to payments and deliveries made by BP Products and receipt of the same by Merritt Oil (Docs. 32-1, 32-2, 32-3 & 32-4), and spreadsheets calculating BP Products' damages (Docs. 32-5, 32-6 & 32-7).[11] Furthermore, Merritt Oil has expressly conceded that BP Products is entitled to prevail on its breach of contract claims. Accordingly, summary judgment is due to be **GRANTED** as to Counts I, III, IV, and V.[12]

C.  Guaranty

Count VI of BP Products' complaint is pled against Defendants Merritt, Blow, and Walding as an action on guaranty. In Alabama, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." Delro Indus., Inc. v. Evans, 514 So. 2d 976, 979 (Ala. 1987). If the guaranty is a continuing guaranty (such as the Unlimited Guaranties at issue in this case), an additional element of notice to the guarantor of the debtor's default must also be proven. Sharer v. Bend Millwork Sys., Inc., 600 So. 2d 223, 226 (Ala. 1992). However, notice need not be given when the terms of the guaranty expressly dispense with the need for it. Id. Furthermore, when a contract is one of "absolute" or unconditional guaranty (as in this case), a creditor may pursue its remedy against the guarantor without first seeking to collect from the principal debtor. Pilalas v. Baldwin Cnty. Sav. & Loan Ass'n, 549 So. 2d 92, 94 (Ala. 1989).

In this case, the uncontroverted evidence shows that Walding executed no fewer than four

---

[11] Because the documentary record establishes BP Products' right to summary judgment, the Court need not — and declines BP Products' invitation to — decide whether any representation made by Richard Merritt in a personal bankruptcy filing constitutes a non-hearsay admission binding on Merritt Oil.

[12] The Court's decision to grant summary judgment as to BP Products' breach of contract claims moots Count II of the Complaint, which asserts an alternative cause of action on an open account.

11

Unlimited Guaranties (Doc. 1-6 at 1-3 & 5); that Merritt Oil defaulted on its Branded Jobber, JRP, JOIP, and EPOS Contracts; that Walding never paid the amounts owed to BP Products by Merritt Oil; and that BP Products notified Walding of Merritt Oil's default, even though Walding had expressly waived such notice.  Walding's untimely and unsigned response to BP Products' motion for summary judgment is silent as to the elements of an action on guaranty and offers no defense to BP Products' claim.

In light of the foregoing, BP Products' motion for summary judgment is **GRANTED** as to Count VI of its complaint concerning the liability of Defendant Walding under the Unlimited Guaranties.

E.     Damages

According to BP Products, Merritt Oil owes various amounts under each of its contracts. (And, as noted above, whatever Merritt Oil owes, Walding also owes by virtue of his Unlimited Guaranties.)  Specifically, BP Product claims $13,882.66 for audit fees, $92,464.67 for unpaid fuel charges, $1,613.91 for Mystery Shop program fees, $271,735.30 for JRP, JOIP, and EPOS fees, funds, and costs, and contractual interest in the amount of **$44,812.95**.  (Doc. 32-8).  With one exception, these amounts are sufficiently supported by documentary proof: BP Products contends that Merritt Oil and Walding owe $5,700.00 in unpaid EPOS system fees (Doc. 1 at 8, ¶ 36; Doc. 32 at 15, ¶ 78; Doc. 32-1 at 9, ¶ 38), but the record supports only **$2,500.00** of that claim.[13]  Otherwise, the Court finds that BP Products is entitled to the full amount of damages it seeks to recover:

---

[13]   The A/R Statement attached to BP Products' motion for summary judgment notes $268,535.30 of "Unamortized Re-image, JOIP & Commlinx costs." (Doc. 32-3 at 2). As the Court has found, the unamortized portion of re-image payments under the JRP Contract was $31,111.85, and the unamortized portion of JOIP incentive payments was equal to $190,135.04. Subtracting those amounts from $268,535.30 yields a difference of $47,288.41. Subtracting the EPOS costs (which were also known as "CommLinx costs," pursuant to ¶ 3 of the EPOS Contract), leaves a balance of $2,500.00, not $5,700.00.

**$421,309.49**.

Additionally, once this Court issues a Judgment, BP Products will be entitled to postjudgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment. See 28 U.S.C. § 1961 (2006); Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 572 n.4 (11th Cir. 1991) ("[I]n awarding postjudgment interest in a diversity case, a district court will apply the federal interest statute, 28 U.S.C. § 1961(a), rather than the state interest statute.").

F.   Attorneys' Fees

The terms of each of the contracts at issue in this case — including the Unlimited Guaranties — provide for the reimbursement of BP Products' "reasonable" costs and attorneys' fees.[14] Based on the Affidavit of Julia M. Voss, Esq. (BP Products' counsel and an attorney at Greensfelder, Hemker, & Gale, P.C.), BP Products seeks reimbursement for $32,231.66 in attorneys' fees. (Doc. 32-12).

Though BP Products' entitlement to reasonable attorneys' fees is uncontested, the Court cannot award such fees at the present time. Ms. Voss' barebones affidavit states only that BP has paid $30,000 to the Greensfelder firm and another $2,231.66 to local counsel. (Id. at 1, ¶ 4). The affidavit does not provide any detail as to the rates charged for legal work on this case, the number of hours expended, or the tasks performed. Compounding the affidavit's insufficiency is that fact that it is unsupported by any documentary evidence whatsoever (e.g., itemized statements, billing records, invoices, information as to hourly rates for attorneys, etc.).

---

[14]   The various contracts oscillate between referring to "reasonable attorney's fees and other costs of defense" (Branded Jobber Contract), "reasonable expenses and attorneys' fees" (JRP, JOIP, and EPOS Contracts), and "attorneys' fees and legal expenses" (Unlimited Guaranties).

Because a party's request for fees may be disallowed where the party fails to itemize or explain what the fees represent or how they were incurred, see, e.g., Vision Bank v. Hill, No. 10-0333-WS-N, 2011 WL 250430, at *4 n.6 (S.D. Ala. Jan. 25, 2011), BP Products is **GRANTED LEAVE** to file, on or before September 22, 2011, a motion for attorneys' fees and costs supported by sworn averments of counsel and detailed records that will permit this Court to fashion an award consonant with the parties' agreement to shift responsibility for reasonable fees to Merritt Oil.[15] Any response should be filed by September 29, 2011.

## V.    Conclusion

In accordance with the foregoing, it is **ORDERED** that BP Products' Motion for Summary Judgment (Doc. 31) is **GRANTED** as to **Counts I**, **III**, **IV**, **V**, and **VI** of its Complaint. It is **FURTHER ORDERED** that **Count II** of the Complaint is **DISMISSED as MOOT**.

**DONE** and **ORDERED** this the **8th** day of **September 2011**.

       /s/ Kristi K. DuBose
       **KRISTI K. DuBOSE**
       **UNITED STATES DISTRICT JUDGE**

---

[15] BP Products is directed to consider the 12 factors that will guide this Court's assessment of the reasonableness of its fee request: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. See Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), overruled on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989).